# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY A. AUSTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-467-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Mary A. Austin requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 11, 1965, and was forty-six years old at the time of the administrative hearing (Tr. 37). She completed seventh grade, and has worked as a cashier II, a motel housekeeper, and waitress (Tr. 61, 170). The claimant alleges inability to work since March 16, 2010, due to hepatitis C, bipolar disorder, and post-traumatic stress disorder (Tr. 15, 170).

## Procedural History

On September 24, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Richard J. Kallsnick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 11, 2012 (Tr. 13-26). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and that she was able to use her hands for hand controls and feet for foot controls, and had no postural, manipulative, visual,

communicative, or environmental limitations (Tr. 17-18). However, he found that she could perform and carry out simple and some complex tasks and could relate to others on a superficial work basis, and that she would be able to adapt to a work situation. He further found that she is afflicted with symptomatology from a variety of sources, mild to moderate chronic pain, which is of sufficient severity as to be noticeable to her at all times, but that she would nonetheless be able to remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily. Finally, he noted that she takes medications for relief of her symptomatology, but that they did not preclude her from functioning at the sedentary level as restricted, and that she would remain reasonably alert to perform required functions presented by her work setting (Tr. 18). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a cashier or housekeeper, or alternatively, that there was work in the regional and national economy that she could perform, *i. e.*, the light jobs of inspector/hand packager, suture polisher, and bagger, and the sedentary jobs of film touch-up inspector, table worker, and food order clerk (Tr. 24-26).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly weigh the multiple opinions of her consultative examiner, Dr. Beth Jeffries; (ii) by failing to properly account for *all* of her impairments at each step of the evaluation process; and (iii) by failing to properly evaluate her credibility. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner must be reversed.

The medical evidence reveals that the claimant was treated at Bill Willis Community Mental Health and Substance Abuse Center ("Bill Willis"), and diagnosed with bipolar disorder I, most recent episode manic, as well as post-traumatic stress disorder and polysubstance abuse by history (Tr. 251). At the time of evaluation on May 13, 2008, the claimant was assessed a global assessment of functioning ("GAF") score of 50 (Tr. 251). On December 4, 2008, her clinician noted that she had made very limited progress toward her current objectives, and had such difficulty keeping appointments that she requested and was approved for home visits. At that time she also reported that her mania had worsened (Tr. 276). On June 29, 2009, she was again diagnosed with bipolar disorder manic with psychotic features, and PTSD, as well as the medical problems of hepatitis C and high blood pressure, and a GAF of 52 (Tr. 267). A treatment plan update completed on February 11, 2010 indicated that there had been no changes, that the claimant should continue with her objectives, and that she was still anxious and waiting to be approved for SSI benefits (Tr. 265). On September 10, 2010, her diagnoses were again stated as bipolar affective disorder, manic, severe, specified as with psychotic behavior, as well as prolonged PTSD (Tr. 254). Additionally, the Axis II assessment indicated that there was an observation of other suspected mental condition (Tr. 254). She was assessed a GAF of 53 at that time (Tr. 254). Counseling and medication management notes from Bill Willis during 2010 reflect that the claimant reported stressors in her life, as well as the need for medication management regarding dosages. She denied drug and alcohol use during this time (Tr. 342-346).

On December 11, 2010, Beth Jeffries, Ph.D., conducted a mental status examination (Tr. 351). Dr. Jeffries noted that the claimant appeared hypomanic, was very talkative and difficult to redirect, but did not provide excessive details despite her talkative responses, which seemed incongruent to Dr. Jeffries (Tr. 351). She denied alcohol use at the time of the examination, but reported using marijuana one month previously, as well as past years of methamphetamine use (Tr. 348). Dr. Jeffries found her speech to be fast but within normal limits, that she had an overall fair appearance, and that she appeared a little older than her stated age (Tr. 348). She had a low average fund of information, and while her memory appeared to be grossly intact, her concentration appeared mildly impaired (Tr. 349). Dr. Jeffries' diagnostic impression for Axis I was marijuana abuse, methamphetamine abuse in reported remission, mood disorder secondary to substance abuse (Tr. 350). Her prognosis indicated that the claimant did not have *cognitive or intellectual* impairments that would interfere with working, but she noted that the claimant had mild impairment in concentration, particularly when faced with difficult problems or calculations (Tr. 350). She believed the claimant's mood disorder was influenced by past and current drug abuse, and any mood instability could be attributed to drug use; she recommended a long period of abstinence from substance use and then a re-evaluation of the claimant's mood condition at that time (Tr. 350-352).

At her second evaluation, Dr. Jeffries noted the claimant's reports of bipolar disorder and PTSD by history, as well as polysubstance abuse in full remission (Tr. 434). She noted at that time that the claimant's symptoms of PTSD and bipolar may pose some impediment to her ability to function in an occupational setting, and she noted the

claimant's thinking pattern might be judged on by other people and make it difficult for the claimant to perform in an occupational setting (Tr. 435).

A state agency physician reviewed the claimant's medical records on February 8, 2011, and found that she had mild restrictions in activities of daily living, and moderate restrictions in maintaining social functioning and maintaining concentration, persistence, or pace, with no episodes of decompensation (Tr. 376). She then completed a mental RFC assessment, finding the claimant was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 362-363). She stated that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 364).

On April 1, 2011, the claimant transferred to and was evaluated at CREOKS Behavioral Health Services, and assessed with bipolar affective disorder, manic, severe, specified as with psychotic behavior, and prolonged PTSD, as well as a GAF of 52 (Tr. 391).

In his written opinion, the ALJ summarized the claimant's hearing testimony and a Third Party Function Report submitted by a friend, as well as much of the medical evidence. He summarized the claimant's treatment notes from Bill Willis and CREOKS, as well as Dr. Jeffries' 2010 consultative examination without analysis, then gave great weight to Dr. Taber's mental RFC Assessment because he found it consistent with "the rather mild objective signs and findings throughout the record" (Tr. 20-22).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a summary of Dr. Jeffries' 2010 report, but entirely ignored her report from 2008, and furthermore did not provide *any analysis* of her findings and prognoses. This was important to do because Dr. Jeffries repeatedly pointed out in both reports her concerns related to the claimant's ability to concentrate, and she indicated concerns about the claimant's ability to do so in an occupational setting in her 2008 report. Although the 2008 report *does* cover a time period prior to the amended alleged onset date, it is nevertheless relevant to a proper longitudinal assessment of the claimant's impairments and should not have been ignored out of hand.

*Hamlin*, 365 F.3d at 1215 ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ.") [citations omitted]. *See also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). Nor did the ALJ provide any such explanation; he adopted the reviewing physician's report without even noting the difference in the opinions.

Because the ALJ failed to discuss evidence that was inconsistent with his RFC determination, *i. e.*, Dr. Jeffries' indications that the claimant had impaired concentration and possibly judgment, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 17th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**